# IN THE COURT OF APPEALS OF IOWA

No. 19-1630
Filed November 27, 2019

**IN THE INTEREST OF V.K., C.K., and I.K.,**
**Minor Children,**

**T.G., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Madison County, Brendan Greiner,
District Associate Judge.

A mother appeals the termination of her parental rights to her three minor
children. **AFFIRMED.**

Julie A. Forsyth of Forsyth Law Office, P.L.L.C., Winterset, for appellant
mother.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant
Attorney General, for appellee State.

Shireen Carter, Clive, attorney and guardian ad litem for minor children.

Considered by Vaitheswaran, P.J., and Potterfield and Mullins, JJ.

**MULLINS, Judge.**

A mother appeals the termination of her parental rights to her three children, born in 2008, 2011, and 2014.[1] She argues termination is contrary to the children's best interests and the court should have established a guardianship in the children's maternal grandparents rather than terminate her parental rights.

## I.    Background Facts and Proceedings

This family has prior involvement with the Iowa Department of Human Services (DHS).[2] The mother and children again came to the attention of DHS in January 2018 due to the mother's use of methamphetamine while caring for the children, untreated mental-health issues, and homelessness. The children were removed from the mother's care in February, upon which they were placed with their maternal grandparents, with whom they had already been living. The children were adjudicated to be in need of assistance in April upon stipulation of the parties. The same month, the mother tested positive for methamphetamine and amphetamines. Over the next several months, the mother did not engage in services. She was arrested several times. She continued to exhibit indicators of drug use. She began a new relationship with a man who subjected her to domestic violence.

The mother began engaging in mental-health therapy and substance-abuse treatment in September, at which time she tested negative for drugs but positive

---

[1] The children's father's parental rights were also terminated. He does not appeal.

[2] The older two children were removed from their parents' care as a result of domestic violence in the home. The case was closed in 2013 upon the understanding that the parents were no longer in a relationship. However, the youngest child was born to the parents about eighteen months later.

for alcohol. The mother consistently attended substance-abuse treatment; she tested negative for drugs from October 2018 through May 2019.

In January 2019, as a result of the mother's engagement in substance-abuse and mental-health treatment and clean drug screens, she was granted an additional six months to work toward reunification. The mother tested positive for marijuana and alcohol in May and again tested positive for alcohol in June. In July, the maternal grandparents allowed the mother to move into the home. It became apparent that she engaged in heavy alcohol consumption. The DHS worker described the mother's situation as "cross addiction"—trading her methamphetamine abuse for alcohol abuse.

Due to the mother's inability to demonstrate long-term sobriety, DHS modified its permanency goal to termination. The State filed its termination petitions in August. The level of the mother's alcohol use continued to be a concern at the time of the termination hearing in September. She was also homeless at the time of the hearing. The children have remained in the home of the maternal grandparents before and during the proceedings. The grandparents intend to adopt upon termination. They have no interest in the establishment of a guardianship. Ultimately, the juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(f) (2019). As noted, the mother appeals.

## II. Standard of Review

We review termination proceedings de novo. *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019). Our primary consideration is the best interests of the children, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the defining elements of which are

the children's safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

### III. Analysis

The mother does not challenge the sufficiency of the evidence supporting the statutory ground for termination cited by the juvenile court. Instead, she argues termination is contrary to the children's best interests and the court should have established a guardianship in the children's maternal grandparents rather than terminate her parental rights.

As to the mother's best-interests challenge, she only challenges specific factual findings made by the juvenile court; she does not make any specific argument as to how consideration of the statutory factors contained in Iowa Code section 232.116(2) renders termination contrary to the children's best interests. In determining whether termination is in the best interests of a child, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2).

The mother has made great strides in these proceedings and we commend her for her efforts. She has meaningfully engaged in substance-abuse and mental-health treatment and her progress in the same showed promise. However, this thirty-two-year-old mother has a long history of abusing illegal substances, dating back to before she was a teenager. She has admittedly abused marijuana, methamphetamine, cocaine, and pain killers. While she has experienced periods of sobriety, her own testimony shows she has always reverted to a life of intoxicated stupor. After a period of progress and a resulting extension to work

toward reunification, the mother began down that path again during these proceedings, turning to marijuana and alcohol. Most troubling is the fact that the mother engaged in excessive alcohol use when she was living with the children and maternal grandparents. "We hold no crystal ball, and to some extent, the [best-interests] determination must be made upon past conduct." *In re M.M.*, No. 16-1685, 2016 WL 7395788, at *4 (Iowa Ct. App. Dec. 21, 2016). Addiction is a crippling affliction. While we hope the mother prevails in her battle with substance abuse, "we cannot deprive a child of permanency after the State has proved a ground for termination" upon such sentiments. *See In re A.B.*, 815 N.W.2d 764, 777 (Iowa 2012). The mother has had ample time to get her substance abuse in check; while she has made significant progress on the methamphetamine front, she turned to alcohol abuse instead. Further, the children have been out of the mother's care since before they were formally removed. The record indicates the grandparents have been the children's primary caregivers for most of their lives. "It is simply not in the best interests of children to continue to keep them in temporary foster homes while the natural parents get their lives together." *Id.* at 778 (quoting *In re C.K.*, 558 N.W.2d 170, 175 (Iowa 1997)).

This is unquestionably one of those unfortunate cases in which a parent makes commendable progress but not enough to have their children returned to their care and matters simply reach a point at which the children's best interests command permanency and stability.

> There are a number of stern realities faced by a juvenile judge in any case of this kind. Among the most important is the relentless passage of precious time. The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems. Neither will childhood await the wanderings of judicial

> process. The child will continue to grow, either in bad or unsettled conditions or in the improved and permanent shelter which ideally, at least, follows the conclusion of a juvenile proceeding.
>
> The law nevertheless demands a full measure of patience with troubled parents who attempt to remedy a lack of parenting skills. In view of this required patience, certain steps are prescribed when termination of the parent-child relationship is undertaken under Iowa Code chapter 232. But, beyond the parameters of chapter 232, patience with parents can soon translate into intolerable hardship for their children.

*In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987). The children are in a relative placement that plans to adopt. The children are integrated into this familial setting, which, unlike the mother, has provided and can continue to provide for their physical, mental, and emotional needs. Continued stability and permanency in this home are in this children's best interests. *See* Iowa Code § 232.116(2)(b); *cf. In re M.W.*, 876 N.W.2d 212, 224–25 (2016) (concluding termination was in best interests of children where children were well-adjusted to placement, the placement parents were "able to provide for their physical, emotional, and financial needs," and they were prepared to adopt the children). While we recognize a bond exists between the mother and children, *see* Iowa Code § 232.116(3)(c), we find the children's interests are best served by termination.

The mother alternatively requests that a guardianship be established in the maternal grandparents in lieu of termination. "[A] guardianship is not a legally preferable alternative to termination." *In re A.S.*, 906 N.W.2d 467, 477 (Iowa 2018) (quoting *In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017)). Although section 232.104(2)(d) allows for the establishment of a guardianship as a permanency option, section 232.104(3) requires "a judicial determination that [such a] planned permanent living arrangement is the best permanency plan for the child[ren]." *See*

*B.T.*, 894 N.W.2d at 32–33. Determining the best permanency plan for a child is a best-interests assessment. A guardianship, rather than termination, would not promote stability or provide permanency to the children's lives. *See In re R.S.R.*, No. 10-1858, 2011 WL 441680, at *4 (Iowa Ct. App. Feb. 9, 2011) ("So long as a parent's rights remain intact, the parent can challenge the guardianship and seek return of the child[ren] to the parent's custody."). Furthermore, the record discloses the establishment of a guardianship would impose financial hardship on the grandparents and, by extension, the children. We conclude the establishment of a guardianship in lieu of termination would be contrary to the children's best interests.

## IV.    Conclusion

We conclude termination of the mother's parental rights is in the children's best interests and the establishment of a guardianship in lieu of termination is inappropriate under the circumstances of this case. We affirm the termination of the mother's parental rights.

**AFFIRMED.**